UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ANAIT KHACHIKYAN, | No. CV 14-00304-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1.  Whether the Administrative Law Judge ("ALJ") properly

```
1                considered the evidence of mental impairment; and
2        2.   Whether the ALJ gave proper consideration Plaintiff's
3                testimony and statements.
4  (JS at 4.)
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and remanded for a <u>de novo</u> hearing.

**I**

**THE ALJ PROPERLY CONSIDERED EVIDENCE OF MENTAL IMPAIRMENT**

Following administrative denials of her disability claims, Plaintiff had a hearing before the ALJ on July 10, 2012, at which time she appeared with a representative and provided testimony (at times with the assistance of an interpreter). Testimony was also taken from a Vocational Expert ("VE"). (AR 37-61.)

Following the hearing, the ALJ issued an unfavorable Decision on August 10, 2012. (AR 24-33.) The ALJ followed the Five Step Sequential Evaluation, as described in the Decision. At Step Two, he found that Plaintiff's severe impairments consist of the following: thoracic and lumbar generalized osteoporosis and degenerative changes; and depression. (AR 26.) He found that Plaintiff's severe impairments do not meet or equal any Listing (which is a matter not disputed in this litigation).

The ALJ determined that Plaintiff's residual functional capacity ("RFC") permits her to perform light work with certain exertional limitations, and also limits her to "simple work, [with] only

occasional public contact." (AR 26.)

In determining Plaintiff's mental RFC, the ALJ reviewed and summarized various consultative and treatment records, and also cited the opinion of a non-testifying State Agency psychiatrist. The ALJ determined to accord substantial weight to the opinion of one Consultative Examiner ("CE"), Dr. Riahinejad, because he found it to be consistent with the record as a whole. For the same reason, he gave substantial weight to the opinion of the State Agency psychiatrist. (AR 30.) Plaintiff takes issue with the weight accorded to these various opinions, and also asserts that the ALJ failed to give specific and legitimate reasons to reject the opinion of her treating psychiatrist, Dr. Yegiazaryan.

The time line of treatment for Plaintiff's mental health issues is somewhat sporadic. As the ALJ noted, the records indicate that Plaintiff was first seen in Los Angeles County USC Medical Center emergency room for depression in November of 2008, at which time she underwent a psychiatric evaluation, was diagnosed with depression, and was prescribed various antidepressant medications. (AR 28, citing AR 198-244.) According to those records, Plaintiff's mental status examination indicated normal hygiene and grooming; cooperative behavior; an awake and alert level of consciousness; fair memory; normal speech; dysphoric and crying mood; constricted affect; linear associations; no hallucinations or delusions or suicidal ideation. She had fair impulse control and insight and judgment, and indicated that she wanted medications. (AR 244.)

It was not until three years later, in March 2011, that Plaintiff had an initial assessment at the San Fernando Mental Health Center at which time she indicated she had received no past treatment from a

psychiatrist. (AR 28, 313-318.) She received subsequent treatment at that facility. The records indicate that she reported feeling a little better in May and July of 2011. (AR 29, 324, 326.) Indeed, the report of a social worker from July 2011 reflected that Plaintiff had a euthymic mood,[1] was not undergoing stressful situations in her life, and had a "good spirit." (AR 319.)

On August 19, 2011, Plaintiff was referred by the Department of Social Service for a consultative psychological evaluation ("CE"). (AR 331-336.) Dr. Riahinejad performed an examination, and also obtained subjective reporting from Plaintiff in which she indicated she has been depressed since 2002, after she underwent a complicated hysterectomy, following which she lost her brother and then her mother in 2005 and 2009 respectively. She indicated she is becoming increasingly depressed, anxious and fearful, and that she was taking various medications prescribed by a psychiatrist that she was seeing. (AR 332.) Dr. Riahinejad performed a test which ruled out malingering (AR 333), and offered a diagnostic impression on Axis I of bipolar disorder, depressed type. Dr. Riahinejad's "Prognostic Impression" in his report states the following:

> "[Plaintiff] is capable of managing funds on her own behalf. She is currently able to understand, remember and carry out simple and repetitive instructions. She could have moderate difficulty understanding, remembering and carrying out complex and detailed instructions. Her pace is slow. She might have difficulty with pace in fast-paced types of positions.

---

[1] Normal non-depressed, reasonably positive mood (Wikipedia).

>        [Plaintiff] is tearful. She may have difficulty
> relating with other people due to her tearfulness. She also
> has medical conditions which may interfere with her
> persistence, for which she is deferred to medical
> specialist."

(AR 335.

In September 2011, State Agency physician Dr. Tashjian made an assessment of Plaintiff's mental residual functional capacity, indicating the following: limitations in understanding and memory; not significantly limited in ability to remember locations and work-like procedures and to understand and remember very short and simple instructions; moderate limitations in ability to understand and remember detailed instructions; limitations in sustained concentration and persistence; no significant limitations in ability to carry out short and simple instructions; moderate limitation in ability to carry out detailed instructions; moderate limitation in ability to maintain attention and concentration for extended periods; moderate limitation in ability to perform activities with no schedule, maintain regular attendance; no significant limitation in ability to sustain ordinary routine without special supervision, to work in coordination with others without being distracted, to make simple work-related decisions; and to complete a normal workday and workweek. (AR 74-75.)

Dr. Tashjian's opinions were essentially consistent with Dr. Riahinejad's conclusions.

Also considered by the ALJ were the opinion of psychiatrist Dr. Arora, who performed a psychiatric CE at the request of the Department of Social Services on September 26, 2010. (AR 258-262.) Dr. Arora took

a complete history from Plaintiff and appears to have performed a brief mental status examination. The diagnosis on Axis I was mood disorder not other specified. Dr. Arora's conclusions were that, based on her interview with Plaintiff, Plaintiff's ability to understand, remember and perform instructions is moderately impaired for simple and moderately complex tasks. Dr. Arora concluded that persistence cannot be fully evaluated in the type of evaluation he performed, but that Plaintiff appears to have moderate psychological limitations that would significantly interfere with her ability to complete a normal workday or week, and the quality and quantity of work performed. She would have an unimpaired ability to relate to and interact with coworkers and colleagues. (AR 262.) It is noted that Dr. Arora examined Plaintiff before she began to receive psychiatric treatment. (On the other hand, Dr. Riahinejad examined Plaintiff after the commencement of this treatment.) Similarly, Dr. Tashjian reviewed the record after Plaintiff began treatment and after she saw Dr. Riahinejad.

Treating psychiatrist Dr. Yegiazaryan provided a letter report directed to the attention of the Social Security Administration in which she indicated that Plaintiff is a client of the San Fernando Mental Health Center, admitted to outpatient services on April 4, 2011, diagnosed with major depressive disorder and post traumatic stress disorder. She receives medication management, therapy, and case management services. Dr. Yegiazaryan indicated that, "Apparently, her depression has been treatment resistant because she has showed [sic] minimal improvement on her symptoms inspite [sic] of taking all medications and being compliant. She remains disabled and dysfunctional; there is a substantial decline in her level of

6

functioning in general ..." (AR 343.)

### A. Applicable Law.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[2]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations,

---

[2] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

7

>delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in

reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

### B. <u>Analysis</u>.

The ALJ determined to accord primary weight to the opinions Dr. Riahinejad, who examined Plaintiff, and Dr. Tashjian, who examined the records. As to Dr. Arora and Dr. Yegiazaryan, the ALJ gave their opinions little weight. Despite that, even if the ALJ had not depreciated Dr. Arora's opinion, the Court notes that the MRFC as assessed by the ALJ would not have been inconsistent with Dr. Arora's conclusions. In other words, according to the regulations, the moderate impairments that Dr. Arora found would not have precluded the ALJ's assessment that Plaintiff was capable of simple work with only occasional public contact. In any event, the ALJ did depreciate Dr. Arora's conclusions, finding that they largely relied on Plaintiff's subjective complaints which the ALJ later found to be not fully credible. (<u>See</u> Discussion, <u>infra</u>.)³ This was a permissible basis for evaluation of Dr. Arora's opinion. <u>See</u> <u>Batson v. Commissioner of Social Security</u>, 359 F.3d 1190, 1195 (9th Cir. 2004). Indeed, as the Court has noted, the mental status examination conducted by Dr. Arora appears to have been extremely brief (<u>see</u> AR at 260-261), and much of Dr. Arora's conclusions seem to depend on what Plaintiff reported during what he denominated his "interview" with her. (<u>See</u> AR at 262.)

---

³ The Court's reversal of the ALJ's Decision, based on the credibility issue, may impact the determination as to the effect of Plaintiff's mental impairment on the disability issue, on remand.

With regard to the letter from Dr. Yegiazaryan, the ALJ also depreciated that opinion. Dr. Yegiazaryan did not set forth any specific functional limitations (AR 343), and she rendered opinions as to Plaintiff's ultimate disability which are reserved to the Commissioner. But more importantly, the ALJ was not incorrect in noting that Dr. Yegiazaryan's conclusions were largely inconstant with the progress notes from Dr. Yegiazaryan's own facility which indicate that, in fact, Plaintiff was making substantial progress with her psychiatric treatment. (See, e.g., AR at 319.) Moreover, Dr. Yegiazaryan's letter of March 2012 postdates Plaintiff's last mental health treatment record from Dr. Yegiazaryan's facility, which was from July 2011, almost a year earlier. (AR 313-330, 343.) Based on staleness alone, the ALJ was justified in depreciating Dr. Yegiazaryan's opinion.

Based on the foregoing, the Court concludes that the ALJ appropriately analyzed somewhat conflicting evidence as to Plaintiff's mental health, and for legitimate reasons, certainly as stated in the Decision, depreciated certain of those opinions and accepted others. On that basis, the Court does not conclude that the ALJ erred in assessing the mental health opinions.

**II**

**THE ALJ ERRED IN DEPRECIATING**

**PLAINTIFF'S CREDIBILITY AS TO SUBJECTIVE SYMPTOMS**

In a Disability Report, Plaintiff stated, "I am in constant pain unable to sleep or drive or have communication more than 3 min. constant worry about things that does not even their." [Sic.] In her testimony at the administrative hearing, Plaintiff indicated that she

has excruciating physical pain, body pain, and headaches, and really bad back pain. She is able to walk for 30 minutes, but cannot stand for an hour and cannot sit for two hours without alternating positions. She can lift half a gallon but not a gallon of milk. (AR 50-52.)

The ALJ found that Plaintiff's credibility is at variance with the weight of the evidence, based on a medical treatment history that is not commensurate with her allegations of excruciating pain and debilitating mental symptoms; a lack of mental health treatment until April 2011; receipt of unemployment benefits for two years; a lack of interest in working; testimony that her mental condition had deteriorated, which was contradicted by her treatment records; and finally, observations made at the Social Security field office. (AR 31.)

Plaintiff asserts that the ALJ failed to articulate legally sufficient reasons to depreciate or reject her testimony as to subjective symptoms.

The credibility assessment factors are well known and are set forth in 20 C.F.R. §§ 404.1529(c); 416.939(c); Social Security Ruling ("SSR") 96-7p, and opinions of the Ninth Circuit of long standing, such as Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), and Thomas v. Barnhart, 278 F.3d 947, 958-959 (9th Cir. 2002). For that reason, they need not be restated here.

The Court must evaluate the ALJ's credibility determination based on the reasons stated in the Decision itself. In this case, the ALJ enumerated the reasons, which the Court will summarize:

1. Plaintiff's medical treatment history and the number of visits she had are not commensurate with her allegations of

1                    excruciating pain and debilitating mental symptoms. For
2                    instance, she relied upon medications for her back and body
3                    pain and did not have any surgery for her back;
4         2.    Plaintiff's lack of any mental health treatment until around
5               April of 2011 is inconsistent with her allegations of mood
6               changes. If her mental symptoms were as serious as she
7               alleged she would have received earlier mental health
8               treatment;
9         3.    Plaintiff's receipt of unemployment benefits for two years
10              reflects negatively on her overall credibility;
11        4.    Plaintiff stated she was not interested in looking for work;
12        5.    The Social Security field office did not notice any
13              difficulty with Plaintiff's normal functioning.

   With regard to Plaintiff's treatment history both for physical and mental issues, the ALJ's observation that Plaintiff's treatment was overly conservative in view of her subjective reporting and debilitating pain, and that she would be expected to have had back surgery, is simply a lay conclusion that is unsupported by medical records. Further, the ALJ did not call upon the assistance of a medical expert to provide such information. In particular, suggesting that she should have had back surgery, without providing any indication of a medical basis to rely upon that conclusion, constitutes error. As Plaintiff correctly points out in her portion of the JS, there is no requirement in any Social Security Regulation, or other rule or case precedent, that requires that an individual must receive surgery for back pain. In particular, in Plaintiff's case, the medical records indicate osteoporosis and degenerative bone

conditions, which may certainly not be amenable to back surgery.

With regard to the ALJ's conclusion that Plaintiff did not receive mental health treatment until April 2011, after she was first diagnosed with mental health issues in 2008, the record is at best ambiguous. Before Plaintiff was treated at San Fernando Mental Health, there are indications that she received treatment for depression from All for Health in July 2010, September 2010, and February 2011. (AR 271, 275, 278.) Indeed, at the hearing, Plaintiff tried, apparently without success, to explain to the ALJ that she in fact had received mental health treatment before she was seen at San Fernando Mental Health. In questioning Plaintiff at the hearing, the ALJ remarked that Plaintiff had stopped working in 2009 and had "waited over two years to, get treatment." Plaintiff responded, "I don't think I did." (AR 49.) Plaintiff indicated that she had been treated at "all for health" [sic], and in fact named one of the doctors. The ALJ responded, "But, they're not psychiatrists. They're just regular doctors." (AR 49.) From this testimony, the Court must conclude that the ALJ was factually incorrect in depreciating Plaintiff's credibility for failing to seek mental health treatment for several years after her 2008 diagnosis. The fact that she may have been receiving mental health treatment from doctors who were not psychologists or psychiatrists is beside the point. Plaintiff could not be expected to control which medical providers gave her services at the facility. Thus, the Court will discard as valid this stated reason for credibility assessment.

With regard to Plaintiff's receipt of unemployment benefits, the ALJ concluded that the meaning of this was that Plaintiff held herself out as employable, at the same time she claimed to be disabled. Again,

while the ALJ pressed this point at the hearing, Plaintiff indicated that she really did not know that, in applying for unemployment, she was indicating a willingness to work. (AR 54.)

The ALJ's citation to Plaintiff's statement that she had lost interest in applying for work, as a reason to depreciate credibility, does not stand as a valid reason. The statement is contained in an isolated comment in the report of CE Dr. Arora under the heading "Work History," where Dr. Arora indicates, "The claimant states that she hasn't been looking for a job since then [her last job in 2009] stating that she isn't interested." (AR 260.) There is absolutely no context provided for this statement, and there was no discussion of it at the time of the hearing. Whatever Plaintiff may have meant, if indeed she made that exact comment to Dr. Arora, is entirely uncertain. It is simply not a valid credibility assessment factor.

The ALJ also compared Plaintiff's own self assessment, that her mental condition was worse at the time of the hearing as compared to 2009, when she stopped working, with the progress notes of the San Fernando Mental Health Center. To some extent, this factor may be characterized as a comparison of subjective reporting to objective medical evidence. But, Plaintiff may have honestly felt that her mental condition was generally worse than it was in 2009.[4]

---

[4] While the ALJ referred to Plaintiff's testimony that she was getting worse, the hearing transcript does not provide a clear indication of what Plaintiff may have meant by this, and the ALJ did not clarify the issue. For example, during her testimony, Plaintiff indicated that her "problem" concerning mental health began in 2005, "and it started getting worse," and then "2009 and on it got worse." (AR 47.) Later on in the hearing, Plaintiff was asked, "So, has your condition improved?" The context of this testimony, however, was with regard to both physical and mental health treatment, and Plaintiff stated, "No. Actually, it's gotten worse." (AR 50.)

The final reason cited by the ALJ for depreciating Plaintiff's credibility was his observation that the Social Security field office "did not notice any difficulty" with various categories of functioning contained on the Disability Report - Field Office. (See AR at 31, citing AR 144-146.) The person who completed this report then stated, "We had a very short conversation. the claim and the 3368 were done on line. the claimant came here to present documents. I didn't notice any difficulties." (Id.) The Court concludes that, as with the other reasons cited, these skeletal observations by a lay person cannot serve as a basis to depreciate credibility.

For the foregoing reasons, the Court agrees with Plaintiff that the ALJ's credibility assessment was faulty, and for that reason, this matter will be remanded for a de novo hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: August 27, 2014              /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE